**W. K. HAYNIE, Plaintiff in Error,**

**v.**

**Keiller HAYNIE, Jr., Defendant in Error.**

**No. 41288.**

Supreme Court of Oklahoma.

Oct. 25, 1966.

Rehearing Denied April 11, 1967.

718 

James W. Batchelor, Durant, Gene Stipe, McAlester, for plaintiff in error.

Sam Sullivan, Durant, Thad L. Klutts, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an appeal by W. K. Haynie (defendant below) from a money judgment rendered on jury verdict against him and in favor of Keiller Haynie, Jr. (plaintiff below), in an action for damages for personal injuries suffered by plaintiff because of the claimed negligence of the defendant. We will continue to refer to the parties by their trial court designation.

There is no dispute that plaintiff was employed by defendant (his father) to work on the defendant's ranch, and that on June 22, 1962, when plaintiff was using an acetylene cutting torch to remove the top (head) from a 52 gallon steel drum or barrel, some substance or gas in the barrel exploded and blew the head of the barrel off. The steel top struck the right side of plaintiff's face, causing a laceration over the right brow, fracture of the frontal sinus and cheek bone and jaw, and injuring the right eye to the extent that sight was lost and it had to be removed and replaced with an artificial eye.

Plaintiff's action was based, inter alia, on allegations that defendant was negligent by failing to furnish plaintiff a reasonably safe place to work, in that the steel drum contained gasoline and gasoline fumes, and defendant knew or should have known of this condition, but plaintiff had no knowledge of the existence of such condition; in failing to warn plaintiff the drum contained gasoline and gasoline fumes; in failing to instruct plaintiff to cleanse the drum of the gasoline and fumes; in failing to furnish plaintiff with suitable tools; and in failing to place a warning of some kind upon the drum. Defendant's answer alleged, inter alia, that plaintiff on his own initiative undertook to cut out the head of the steel drum contrary to the specific instructions of defendant; that plaintiff knew or should have known from personal knowledge and experience that the steel drum had formerly contained DDT (insecticide) or other chemicals, fuels or substances, including gasoline, or were likely to have contained such substances, known to the plaintiff and not known to the defendant; that plaintiff was experienced in cutting heads from drums and cutting them in other ways, after they had been emptied, so they could be utilized for various uses around the farm, including water troughs; that defendant had no knowledge, actual or constructive, of any latent or concealed danger to the safety of plaintiff, or that the drum contained any chemical or substance which was explosive or dangerous to plaintiff; that plaintiff had superior knowledge regarding the safety considerations (precautions) involved; and that plaintiff was injured solely because of his own primary negligence, and was guilty of contributory negligence.

Defendant makes no contention that the amount of the verdict is too large or exorbitant.

Defendant contends that the trial court erred in not sustaining his demurrer to plaintiff's evidence and his motion for directed verdict.

▉ In determining this proposition there is the well established rule of law stated in Andrews v. Aday, Okl., 380 P.2d 271, as follows:

"In actions of legal cognizance a demurrer to plaintiff's evidence or motion for directed verdict should be overruled unless there is an entire absence of proof

tending to show a right to recover; and, in passing upon a demurrer to the evidence or a motion for a directed verdict, the trial court must consider true all of the evidence favorable to the party against whom the demurrer or motion is directed together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the demurrant or movant."

The record reflects that plaintiff was the son of defendant and was 26 years of age when injured on June 22, 1962; that he graduated from Oklahoma State University with a Master's Degree in Science and Education, and for one year taught mathematics and physics in a school in New Mexico; then returned to Oklahoma in May 1961, and was employed by defendant to work on the ranch at a monthly salary, with a residence thereon and utilities furnished for plaintiff and his family. The defendant was a physician and surgeon in Durant, Oklahoma, and had a number of employees working on the outlying ranch. In the operation of the ranch and growing of crops the defendant used DDT and toxiphene insecticides. This material came in 52 gallon and 5 gallon metal containers (drums) and after being emptied, the drums were stored in a chicken shed and in a pasture close by the house occupied by plaintiff, which was about a mile from a shed area where plaintiff was injured. An undetermined number of these drums were already in the described storage area when plaintiff moved into the house in about May 1961. It was the practice on the ranch, both before and after plaintiff was employed, to cut out the top or cut the drums lengthwise and use them as troughs to water the livestock. The cutting was done with a hammer and chisel or with an acetylene gas cutting torch. Prior to his employment the plaintiff had not operated a gas cutting torch, but he had seen another employee use this method of cutting the barrels, and during the approximate year of his employment prior to his injury he had used the cutting torch to cut up 18 or more barrels. In some instances he had removed the two threaded and screwed in plugs before applying the torch and in others he had done the cutting with the plugs in the barrel, and there had never been an explosion of any kind from the contents of the barrel.

The record reflects another employee had informed plaintiff that a trough was needed to water the hogs and that plaintiff had taken a barrel from the storage area and transported it with a pickup truck to the ranch shop area with the intention of cutting it.

It was also the practice to take barrels from the storage area and use them for the purpose of transporting gasoline and diesel fuel for use in the tractors. Both parties knew this. Defendant testified that to his knowledge these barrels were not stored with those that had been emptied of DDT, and further that after the barrels were used for this purpose they were not again placed in the storage area but were left where plaintiff was injured (the shop area). Plaintiff testified that he did not know that the barrels (in storage area) from which he got the one (barrel he took to shop) had been used for other purposes, such as transportation of fuels and gasoline.

At about midday of June 22, 1962, the defendant and plaintiff and several other employees were present in the shop area. Plaintiff's version of his conversation with defendant in effect was that defendant suggested plaintiff take the wheat combine to the field and begin combining; that plaintiff told him the hogs needed water and he (plaintiff) would cut out the barrel top; that defendant suggested another employee (Royce) do this and plaintiff stated Royce did not know how to use the cutting torch and plaintiff could do it quicker; and defendant said "Okay" and for the others to take the combine and he (defendant) would take plaintiff to the field. Plaintiff then, after trying to remove the plugs with pliers, applied the cutting torch to the barrel, in the presence of defendant, and the explosion blew out the top, causing the described injuries. The barrel was labeled "DDT."

Plaintiff and defendant both stated they had no knowledge that DDT or toxiphene

was explosive and that they knew the danger connected with using a cutting torch on a drum containing an explosive substance. Both disclaimed any knowledge that they knew or suspected the barrel contained an explosive such as gasoline. Defendant stated he gave no direction to plaintiff to cut the head from the barrel, and plaintiff concedes in his testimony that he received no specific order to do this work. Defendant stated he gave no warning to plaintiff or to other employees not to put live "fuel" (fire) on a drum containing petroleum products, and that plaintiff proceeded with the cutting as he had in the past. Plaintiff introduced testimony of experienced persons that the procedure in such cases was to remove the plugs and fill the barrel with water or cleanse the barrel before beginning the cutting operation.

In support of his proposition that the trial court erred in not sustaining his demurrer to plaintiff's evidence and his motion for a directed verdict defendant urges that he was under no obligation to warn plaintiff for the reason that plaintiff had superior knowledge, that plaintiff knew of the danger, and that plaintiff was guilty of primary negligence. Defendant places great weight on both the scholastic education and previous barrel cutting operations of plaintiff and argues in effect that this knowledge and experience, when joined with the plaintiff's admission that he knew some barrels had been used for gasoline and diesel fuel, was tantamount to knowledge by plaintiff that there was an obvious danger of which he knew or should have known. Defendant concludes from this that plaintiff assumed the risk of the danger connected with cutting the barrel.

Defendant relies primarily on the decisions in Kinder v. Godfrey, Okl., 315 P.2d 676, and Montgomery v. Kiwash Electric Coop., 206 Okl. 606, 245 P.2d 723. In the Kinder case an experienced farm worker suffered an injury to his hand when it was caught in the moving rollers of a mechanical cotton picker while trying to unclog the rollers. In the Montgomery case an experienced electrical worker was electrocuted when he came in contact with a high voltage line while making a connection between such line and the electric line to a house. In both cases the injured were experienced, the danger was ordinarily incident to the employment, the danger was patent and obvious, and the employer had no duty to warn the employee of the danger.

The defendant particularly relies upon the statements in the Montgomery case (245 P.2d 723, pp. 724, 725) relative to presumption that the servant understands the danger incident to normal, ordinary risks, and that adults who hire out to do a particular work are supposed to understand the ordinary dangers pertaining to such work, and accept the risks incident thereto, and relative to employer having no duty to warn experienced employees of dangers ordinarily incident to their employment, and is not bound to warn them unless the danger is latent, abnormal, or unusual, of which the employer was aware and the employee was not. The defect in defendant's argument and application of the authorities is that he submits his own interpretation of the evidence as being conclusive that the danger plaintiff was exposed to was incidental to the normal, ordinary risks of his employment, or if the danger was latent, abnormal, or unusual, then that defendant was not aware and plaintiff was aware of such danger. The jury in determining the facts could have reached different conclusions.

The record reflects that both parties testified that to their knowledge DDT and toxiphene was not explosive and the undisputed testimony is that a number of barrels that had been "emptied" were cut up with a torch with no explosion. It is admitted that some barrels had been used to transport gasoline or diesel fuel and that gasoline and its fumes are very explosive. Defendant testified these barrels were left at the shop area. Based on this record the jury could have reasonably determined that the barrel the plaintiff was working on had been used to transport gasoline and that either before or after plaintiff's employment commenced, it had been placed in the storage area and

then been hauled by plaintiff to the shop area.

In Munroe v. Schoenfeld & Hunter Drilling Co., 178 Okl. 149, 61 P.2d 1045, it was held in an action by employees against his employer that negligence in such cases exists (1) When there exists a duty on the part of the employer to the employee; (2) which the employer failed to perform; (3) and from which failure it proximately resulted that employee was injured.

In King's Van & Storage Company v. Criner, Okl., 301 P.2d 1015, it is stated:

"It is the established rule in this state that negligence may be established by circumstantial evidence and the reasonable inferences to be drawn therefrom, and that the proximate cause of an injury may be determined from circumstantial evidence. Where there is competent evidence on these questions from which reasonable men might draw different conclusions, they are for the jury to decide."

In Wright v. Clark, 177 Okl. 628, 61 P.2d 192, we stated:

"It is the duty of the master to furnish a servant with a reasonably safe place in which to work, reasonably safe appliances with which to work, reasonably safe material with which to work, and a reasonably safe method by which to work, which duties the master cannot delegate so as to relieve himself of liability from injuries resulting from their violation."

In the present case the plaintiff was employed to perform ranch and farm work and had previously cut up barrels, both with the plugs in and out, and there was no explosion. It would appear that the danger connected therewith was not patent and obvious. It would further appear that the instant explosion was caused by carelessness in allowing or permitting a barrel that had been used for gasoline to be stored with others, with no mark or identification that it had been so used.

In Oklahoma Natural Gas Co. v. Walker, Okl., 269 P.2d 327, this court said:

"A servant in accepting an employment does not assume such risks as are created by the master's negligence, nor such as are latent or are only discovered at the time of the injury.

"Generally speaking, an employer is chargeable with notice or constructive knowledge of any danger or defect which he should have discovered in the exercise of reasonable diligence.

"It is the duty of the master to warn and instruct his servant as to defects and dangers of which he knows, or ought, in the exercise of reasonable care and diligence, to know, and of which the servant has no knowledge, actual or constructive; prima facie this duty requires the master to warn and instruct the servant with reference to all abnormal or unusual, peculiar or extraordinary risks or hazards of the employment."

From the record before us we cannot say as a matter of law that under the circumstances the defendant was free of negligence and that plaintiff had knowledge, actual or constructive, of the danger. Where there is competent evidence on the question of negligence from which reasonable men might draw different conclusions, the question of negligence is one for the jury, and the question of proximate cause of an injury, under like circumstances, must be left to the jury. Martin v. Farmers Cooperative Exchange, Okl., 368 P.2d 1012.

Defendant further contends that plaintiff violated defendant's instructions, citing Kansas City Southern Ry. Co. v. Self, 92 Okl. 210, 218 P. 833, in which it was held that where the employee violated his instructions and undertook a task entirely outside of his instructions and contrary thereto, he assumed the risks that were incident to such action, and a recovery for his injuries should be denied. The decision is not in point under the present circumstances. Defendant relies upon the conversation that took place during the noon period when the combine was in the shop area. Plaintiff then told defendant the hogs needed water and that he could cut a barrel

for this purpose; defendant said to let Royce do this with a hammer and chisel and plaintiff said Royce did not know how to use the torch and he (plaintiff) could do it in 15 minutes and not over 7 minutes; and defendant said "Okay" and directed another employee to take the combine to the field and he (defendant) would take plaintiff to the field. The hammer and chisel were on the combine. Defendant then stood by while plaintiff began cutting with the torch, and according to defendant "in the same manner, or similar manner, to what he (plaintiff) had done on previous occasions."

This was clearly not a violation by plaintiff of instructions to use the hammer and chisel to cut the barrel. The circumstances show that he acquiesced in the use of cutting torch and may be construed as approval of the use of that instrument.

Defendant also contends that plaintiff was a vice principal and that under the rule of law stated in City of Edmond v. Washam, 190 Okl. 140, 121 P.2d 300, he was not required to furnish plaintiff a reasonably safe place to work, reasonably competent fellow servants, and reasonably safe tools and appliances with which to work, in the absence of advice by the principal that such are needed and a request that they be furnished.

Even though we admit the above rule, still the plaintiff was not a vice principal, for the reason that the situations in the present case and in the cited case are not at all similar. In the cited case the City owned and operated an electric power and light system and the injured (deceased) employee was hired and placed in charge of the distribution system and the other men in his "department," with duties of inspection, care, supervision and maintenance of the lines, wires, poles and other outdoor equipment. He was the head and in charge of a "department" of the City and was found to be a vice principal.

■ The decision cites in support of this conclusion the case of Wolverine Oil Co. v. Kingsbury, 66 Okl. 271, 168 P. 1021,

in which it was held that an employee is a vice principal when he is in charge of the master's business or any department thereof, whose duties are exclusively supervision, direction, and control of the work over a subordinate employee engaged therein, whose duty it is to obey him, and further that the employee, to whom the master delegates those absolute or nondelegable duties which the law casts upon the master for the protection of his servants, is his vice principal.

See also Chap-Tan Drilling Co. v. Myers, 203 Okl. 642, 225 P.2d 373, 375, for a similar definition of vice principal.

■ Plaintiff's duties and position, as described herein, do not meet the requirements of the above definitions. Plaintiff's amended petition alleges he was employed by defendant "to work on the defendant's ranch as a laborer with various duties of attending the cattle and to do ranch work with the ranch machinery * * *." Defendant's answer generally denies such allegations, but does not allege plaintiff was a vice principal. Plaintiff testified he "started working on the farm," for defendant. Defendant testified that plaintiff's duties and responsibilities were "To work on the farm, as directed by me." and that he had several employees who live on his farms and that they receive the same housing and fringe benefits as plaintiff does, and that "they are all treated alike."

There is no merit in defendant's contention that plaintiff was a vice principal.

Defendant further contends the contributory negligence of plaintiff was so clearly shown by the evidence that this issue became a matter of law by the court.

■ This court has repeatedly held that in view of the constitutional provision making contributory negligence a question of fact for the jury, if there is any evidence of contributory negligence or from which contributory negligence may be inferred or presumed, the issue must be left to the jury, and the verdict on that issue is conclusive. Const. Art. 23, Sec. 6; Cosmo

Construction Company v. Lóden, Okl., 352 P.2d 910.

It is our conclusion that the propositions of error presented by the defendant have no merits.

Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY and LAVENDER, JJ., concur.