**CHAMPLIN OIL AND REFINING COMPANY, a Delaware Corporation, and L. C. Webster, d/b/a Bus Oil Company, a Sole Proprietorship, Plaintiffs in Error,**

v.

**Calvin ROEVER, Defendant in Error.**

**No. 42451.**

Supreme Court of Oklahoma.

Dec. 1, 1970.

As Corrected Dec. 7, 1970.

E. S. Champlin, McKnight, Gasaway & McKnight, Enid, for Champlin Petroleum Co.

Drennan & Drennan by J. C. Drennan, Medford, McKnight, Gasaway & McKnight by L. W. McKnight, Enid, Mitchell, Mitchell, DeClerck & Cox by E. B. Mitchell, Jr., Enid, for L. C. Webster.

Otjen & Carter and Charles G. Huddleston, Enid, for defendant in error.

LAVENDER, Judge:

This appeal arises in an action by the defendant in error, Calvin Roever, as plaintiff, against the plaintiffs in error, Champlin Oil and Refining Company, a corporation (hereinafter called Champlin), and L. C. Webster d/b/a Bus Oil Company (hereinafter called Webster), as defendants, for damages for the virtual destruction of a truck-tractor, owned by the plaintiff, in a fire which, he alleged, was the proximate result of negligence of the defendants involving the construction, maintenance and operation of certain facilities and equipment located upon a tract of land in Medford, Oklahoma, where the fire occurred.

Both of the defendants cross-petitioned against plaintiff alleging the cause of the fire was negligence on his part. The trial court sustained plaintiff's demurrer at the close of the evidence to Champlin's cross-petition and sustained Champlin's demurrer to plaintiff's evidence against it. The issues between plaintiff and Webster were submitted to and decided by a jury in plaintiff's favor. Webster's subsequent motion for new trial was denied and he has appealed here.

Champlin has also appealed contending it was error for the trial court to sustain plaintiff's demurrer to Champlin's cross-petition. We will discuss Webster's contentions first. These contentions are: the trial court erred in admitting certain evidence and the evidence is insufficient to support the verdict and judgment in favor of plaintiff.

From the pleadings and evidence before the trial court, the following pertinent circumstances appear:

To unload the trailer tank's contents into Webster's overhead storage tanks, it was necessary for plaintiff to park his rig in close proximity to both the tanks and an overhead "loading arm," which was part of the defendant's equipment. It was also necessary to pump the fuel from the trailer's tanks by the use of the tractor's engine. The fuel was thus transferred under considerable pressure from the tank trailer into defendant Webster's tanks. The overhead "loading arm," according to one of the plaintiff's witnesses, was so constructed that the gasoline could—as it was being thus unloaded—be forced up into the "loading arm" past a low pressure valve. That the weight of this fuel plus the vibrations of the pumping action would gradually tip the "loading arm" over and dump the fluid out which had accumulated in the "loading arm." There was evidence that the plaintiff's vehicle was so close to the "loading arm" that such fuel could have poured onto the truck or the ground in close proximity to it. The plaintiff's witness testified that the installation of a high-pressure valve on the "loading arm" would have prevented the spillage of gasoline from it. This same person testified that it was his opinion (he had been qualified as an expert) that it was gasoline that had been spilled from the loading arm onto plaintiff's truck and the ground nearby that was involved in the fire as it started. This testimony was substantiated somewhat by the testimony of a witness concerning a conversation with Webster sometime shortly after the fire. According to the witness, Webster said that he thought he-knew what caused the fire, that he thought one of the loading arms had dropped down and spilled some gasoline, that they had had that trouble before but always got it fixed before anything happened, but hadn't been able to get Champlin to fix this one. Webster disputed this testimony. The question was for the jury.

Even without considering the evidence of the plaintiff that the defendant

contends was incompetent, irrelevant, immaterial, and prejudicial to him (which, for the sake of brevity, we are not detailing here), there was ample, uncontested, direct evidence from which the jurors could, reasonably, have inferred that the construction, maintenance and operation of the loading and unloading facilities at this plant in such a way that, during an unloading operation, some of the liquid being pumped from a transport truck into a storage tank through a main line could, and, of necessity, would, reach the gravity or low-pressure valve connected to that main line, under high pressure, constituted negligence. The jury could also have concluded that, in this particular instance, such negligence resulted in gasoline being forced through the valve on the loading arm, accumulating in the loading arm, tipping the spout-end of the loading arm downward, and dumping the accumulated gasoline onto the transport truck and/or the ground beneath and near the truck; and that, combined with a spark from one of the three possible sources of ignition mentioned in the evidence (and referred to below), such negligence was the proximate cause of the fire and the resulting damages to the parties; and that negligence on the part of the plaintiff was not involved in the starting of the fire or any of the resulting damages.

Webster argues, as we understand it, that there was no direct evidence from which the jurors could, reasonably, have inferred—without basing an inference or presumption upon an inference or presumption—that the spark which was required to ignite the gasoline involved in the fire as it started was the result of negligence on his part.

Under the evidence, there were three logical, possible sources of the required spark in this instance: The running engine of the plaintiff's truck-tractor (always required in pumping liquids from a transport truck into an overhead storage tank, as in this instance); a discharge of static electricity that is always generated by the flowing hydrocarbons being pumped into a storage tank; or a loading spout being filled with gasoline that had been forced through the gravity or low-pressure valve by the high pressure used during such a pumping operation, tipping downward and striking the transport truck at, or about, the time that gasoline spilled from the tipped loading spout.

Under general principles of law stated in City of Altus v. Wise et al. (1943), 193 Okl. 288, 143 P.2d 128, 131, as applied to the present case, the defendant would not be relieved of liability for the results of his original negligence, unless the spark that ignited the fire as it started was the result of negligence on the part of the plaintiff.

■■■ Omitting the authorities cited for the various stated principles, we quote those general principles of law:

"The general rule is that the causal connection between an act of negligence and an injury is broken by the intervention of a new, independent and efficient cause, *which was neither anticipated nor reasonably foreseeable.* * * * In such case the negligence of the original wrongdoer is not actionable because it is only the remote, rather than the proximate, cause of the injury. * * * Thus where a negligent act merely creates a condition making an injury possible, and a subsequent independent act causes the injury, the original act of negligence is not ordinarily the proximate cause thereof. * * *.

"However, in order to relieve the one guilty of the first act of negligence of responsibility, the intervening cause must entirely supersede the original negligence. In other words, it must be independent of the original act and adequate of itself to bring about the injurious result. * * * Consequently where an act of negligence is not superseded by a second cause, but continues to operate, so that the injury is the result of both causes acting in concert, each act may be regarded as the proximate cause

thereof. * * *. And where separate and independent *acts of negligence* combine to produce an injury, each *wrongdoer* is responsible for the entire result. * * *.

"Furthermore, *if the intervening cause was foreseen, or might reasonably have been foreseen, by the wrongdoer,* his negligence may be considered as a proximate cause of the injury and he may be held liable notwithstanding the intervening cause. In such case the negligence continues and operates contemporaneously with the *anticipated* intervening cause and may be regarded as a concurrent cause of the resulting injury. * * * In such case, of course, it is not necessary that the precise form of the intervening cause should have been anticipated. It is enough if it could have been reasonably expected that a cause would intervene in a way likely to produce an injury similar to that actually suffered. * * *." (Emphasis supplied)

Obviously, a spark from any one of the three possible, logical sources of ignition in the present case would be harmless and inadequate, of itself, to cause the fire and resulting damages to the parties involved herein. Consequently, the necessary intervening spark could not, and did not, break the causal connection between the defendant's original negligence (necessarily found by the jurors in reaching their verdict herein) and the fire and resulting damages to the parties.

The jurors could, reasonably, have inferred and concluded, from the direct evidence, not only that the defendant should have foreseen the possibility of a loading arm's being tipped downward, and dumping the accumulated gasoline onto whatever might be beneath the tipped spout, during the unloading of gasoline at this plant, but also should have foreseen the possibility of a spark from any one of the three logical, possible sources mentioned above occurring at, or about, the same time and igniting the gasoline so spilled from a loading arm, and starting a damaging fire.

And, since, under the evidence, that was the only logical source of the gasoline involved in the fire as it started, the jurors could, reasonably have inferred and concluded—without basing an inference or presumption upon an inference or presumption—that such gasoline probably was ignited by a spark created by the loading arm's striking the transport truck.

At any rate, the jurors could, reasonably, have inferred and concluded, from the direct evidence, that the ignition of the gasoline was not the result of negligence on the part of the plaintiff.

The contention that the verdict is not supported by sufficient evidence cannot be sustained.

Before discussing Webster's other proposition, that the trial court erred in admitting certain evidence, we note that 22 O.S.1961, § 1068 (a territorial statute, as carried forward into the state statutes and revised in 1910) provides:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

In Oklahoma City Land & Development Co. et al. v. Adams Engineering & Blueprinting Co. (1915), 51 Okl. 763, 155 P. 496, and Missouri Pacific Railroad Co. v. Fleak (1927), 124 Okl. 213, 258 P. 260, this court held, in the first and second paragraphs of its syllabus to each case:

"Where there is competent evidence reasonably tending to support the findings of the jury, the same will not be disturbed upon appeal."

"If, after an examination of the entire record, this court is unable to say that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right, the judgment must be affirmed."

And, citing Byrd v. McKoy (1938), 183 Okl. 209, 81 P.2d 315, and Wilson v. Holmes (1939), 185 Okl. 239, 91 P.2d 85, this court said, in Layton v. Purcell (1954), Okl., 267 P.2d 547, 554, that the burden is upon the party alleging errors to show that the alleged errors were prejudicial and to make it appear that the verdict or judgment probably would have been different had they not occurred.

Also, see Parris v. McCallay (1967), Okl., 424 P.2d 62, wherein this court recognized that burden (page 68), and held, in the fourth paragraph of its syllabus:

"Under the harmless error statutes, Tit. 12 O.S.1961, §§ 78 and 636, and Tit. 22 O.S.1961, § 1608, where the judgment of the trial court is in accord with the verdict of a properly instructed jury, and is within the issues and supported by competent evidence, it will not be reversed on account of alleged errors in practice and procedure, unless they constitute substantial violation of appellant's constitutional or statutory rights, or have prejudiced him in the jury's determination."

Webster's proposition that the trial court erred in admitting certain evidence offered by the plaintiff, over the objections of the defendants, involves portions of the safety code mentioned in '63 O.S.1961, § 135, certain professional opinions of plaintiff's witness Parish (which were in substantial harmony with the admitted provisions of that safety code), and the testimony of two gasoline transport drivers concerning two instances (one for each of such witnesses), about three or four weeks, or a month, prior to the date of the fire involved herein, in which a loading arm tipped downward and spilled gasoline onto the witness and his truck while gasoline was being unloaded at this same plant.

■ Because of our view that the defendant Webster failed to sustain his burden of showing that the admission of such evidence, or any part of it, constituted prejudicial error, we deem it unnecessary to outline such evidence or to determine its admissibility or inadmissibility.

It is not contended that the admission of any of such evidence constituted a substantial violation of any constitutional or statutory right, and we perceive no such violation. It is not contended that the jury was not properly instructed or that the verdict and judgment based thereon are not within the issues. As suggested above, there was ample direct evidence (not objected to by the defendants) from which the jury could, reasonably, have inferred and concluded, *without considering this evidence at all,* that the fire and resulting damages to the parties were the proximate result of negligence in the construction, maintenance and operation of these unloading and loading facilities without providing a high-pressure shut-off valve to prevent gasoline from reaching the gravity or low-pressure valve on the loading arm while gasoline was being pumped from a transport truck into the storage tank through the main line to which that loading arm was connected, and that negligence on the part of the plaintiff was not involved in the starting of the fire or in the resulting damages to the parties. We cannot say, from an examination of the entire record in this case, that any of these alleged errors in the admission of evidence, (if, in fact, error) *probably* resulted in a miscarriage of justice. Consequently, under the pertinent statutes, and decisions of this court, the verdict and judgment in favor of the plaintiff and against the defendant Webster cannot be set aside, or a new trial granted, because of such alleged errors.

Assuming, without deciding, that, as contended by Champlin the trial court did err in sustaining the plaintiff's demurrer to the evidence with respect to Champlin's cross-action against the plaintiff, we do not think that Champlin has sustained its burden of showing that such error constituted prejudicial error.

Since the jury found for the plaintiff and against Webster with respect to the plaintiff's action and Webster's cross-action, and the evidence concerning possible negligence on the part of the respective parties, and concerning the proximate cause of the fire and the resulting damages to the respective parties, was exactly the same as to all three actions and the defenses thereto, it appears, from an examination of the entire record, that the jury probably would have returned a verdict in favor of the plaintiff and against both defendants with respect to all three actions, if all three actions had been submitted to the jury.

Champlin does not contend that the trial court's action in sustaining the plaintiff's demurrer to the evidence with respect to Champlin's action against the plaintiff constituted a substantial violation of some constitutional or statutory right, and we perceive no such violation. We cannot say, from an examination of the entire record in this case, that the error alleged by Champlin, if in fact error, probably resulted in a miscarriage of justice. Under the statutes and decisions concerning "harmless error," that action of the trial court cannot be reversed or set aside, or a new trial granted, on the basis of that alleged error, and, therefore, is affirmed.

IRWIN, C. J., and WILLIAMS, BLACKBIRD, JACKSON, HODGES and McINERNEY, JJ., concur.

BERRY, V. C. J., concurs in part and dissents in part.