Daniel **JACKSON** and Cheri Denise Cox, Plaintiffs–Appellants and Counter–Appellees,

v.

Roxie T. **JONES,** Abraham B. Hagens, Shelby L. Perry, Mid–Century Insurance Company and The City of Oklahoma City, Defendants–Appellees and Counter–Appellants.

Nos. 77785, 78097.

Supreme Court of Oklahoma.

Nov. 28, 1995.

Richard A. Nelson, Oklahoma City, for Appellant, and Counter–Appellee, Daniel Jackson.

R. Lyle Clemens, Clemens, Holshouser, Pate & Klein, Oklahoma City, for Appellant, Cheri Denise Cox.

Harry R. Palmer, Jr., Oklahoma City, for Appellee, Roxie T. Jones.

Greg D. Givens, Brian Husted and Robert D. Ramage, Edmonds, Cole, Hargrave, Givens & Witzke, Oklahoma City, for Appellee and Counter–Appellant, Abraham B. Hagens.

William J. Molinsky, Don Manners Law Office, David D. Wilson and Joseph T. Acquaviva, Jr., Wilson, Cain & McAtee, Oklahoma City, for Appellee, Shelby L. Perry.

Lana Cohlmia, Culp, Heath, Sushnik, Percival & Percival, Oklahoma City, for Appellee, Mid–Century Insurance Co.

James G. Hamill, Municipal Counsellor, Richard N. Mann, Richard C. Smith, John M. Jacobsen and Deborah L. Jacobson, Assistant Municipal Counsellors, Oklahoma City, for Appellee, The City of Oklahoma City.

OPALA, Justice.

Two issues are dispositive on certiorari: (1) Did the trial court err when it entered judgment against the plaintiffs upon sustaining the three defendants' demurrers to the evidence? (2) Is the appellate court's decision granting nisi prius costs to the jury-exonerated defendant reviewable on certiorari now before us? We answer the first question in the affirmative and the second in the negative.

# I

## THE ANATOMY OF LITIGATION

Roxie T. Jones [Jones] was travelling westbound on Interstate 40 in the left-hand lane near Westminster Road in Oklahoma County. She was following an Oklahoma City [City] Police Officer [Officer]. Traffic, which had just completed its passage through a construction stretch of the Interstate highway where it had been choked down to a single lane, had begun to diffuse into multiple lanes. The Officer activated his emergency lights (but *not* his audible siren) and turned into the center median to pursue an eastbound speeder. Interpreting his action as an order for *her* to stop, Jones pulled over onto the median about one quarter mile ahead of the Officer. She stopped with part of her station wagon extending backwards into the fast traffic lane. Shelby L. Perry [Perry], who was following Jones in his motor home, succeeded in stopping behind her vehicle.[1] An unidentified truck hauling a boat trailer (which was in line of traffic following Perry) maneuvered *around* the mobile home into the adjacent right-hand lane. Daniel Jackson [Jackson or motorist], whose vehicle was following immediately behind the truck/boat trailer, collided with the Perry mobile home, injuring both him and his passenger Cheri Denise Cox [Cox or passenger]. Their light truck came to rest at an angle with the right side exposed to traffic. Abraham B. Hagens' [Hagens] car struck the Jackson/Cox truck on the passenger side, resulting in a more extensive injury to its occupants. According to some testimony, the entire sequence of events transpired within a few seconds.

Jackson and Cox brought negligent tort actions[2] against the City, Jones, Perry and Hagens. Their claims against the City are rested upon its Officer's *violation of a statutory duty* which, they allege, constitutes *negligence per se*.[3] The case went to a jury. At the close of Jackson's and Cox's case the trial court sustained demurrers to the evidence interposed by the City, Jones and Perry. It ruled that (1) the Officer was not primarily negligent because the double-impact collision was not a foreseeable result of his act of turning into the median, (2) Perry was not primarily culpable because his behavior was *reasonable* and, (3) regardless of the Officer's and Jones' negligence, Perry's acts constituted a *supervening cause* which effectively insulated the others from liability. Jackson's suit against Hagens (the only remaining defendant in the case) proceeded to verdict *without* Cox's participation. Her claim against Hagens had been settled.[4] Jackson was adjudged 80% negligent and Hagens 20%. In a post-trial proceeding Hagens sought to recover his nisi prius court costs, which the trial court denied. Jackson and Cox, whose new trial quests were also refused, appealed for review of (1) the judgment on demurrers' sustention and of (2) the new trial denial.[5] *Hagens* appealed for cor-

---

1. Whether Jones had pulled into the median *far enough* to allow Perry to pass is a disputed fact question.

2. Jackson brought a direct action against *his* insurance carrier, Mid–Century Insurance Company, for property damage covered by their insurance contract. This loss was settled. Jackson's passenger, Cox, settled her claims against Jackson and Hagens. Jackson's *property damage* claim against Hagens was not pressed in this action.

3. The terms of 47 O.S.1991 § 11–106 provide in pertinent part:
 "(a) The driver of an ... emergency vehicle ... when in the pursuit of an actual or suspected violator of the law ... may exercise the privilege set forth in this section, but subject to the conditions herein stated.
 (b) The driver of an ... emergency vehicle may:

\* \* \* \* \* \*

4. Disregard regulations governing direction of movement or *turning in specified directions*.
 (c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of *audible and visual signals*...." (Emphasis added.)
 The terms of the Oklahoma City Municipal Code, § 32–244 prohibit U-turns except at a median *crossing*.

4. *See* the text of note 2, *supra*.

5. Jackson and Cox's new trial motion sought vacation of the trial court's judgment upon the City's, Jones' and Perry's demurrers. *It did not address itself to the Jackson/Hagens jury verdict.* That claim's nisi prius resolution is beyond our reach and left undisturbed. The terms of 12 O.S.1991 § 991(b) provide:

 "If a motion for a new trial be filed and a new trial be denied, *the movant may not*, on the

rective relief from denial of his nisi prius costs.[6] The Court of Appeals *affirmed* the nisi prius judgment on demurrers but *reversed* the decision on costs. The latter were ordered taxed against Jackson. Jackson and Cox were granted certiorari review of *that portion* of the appellate court opinion which affirmed the trial court's judgment on demurrers and its denial of new trial; *Jackson did not seek relief from the Court of Appeals' costs award to Hagens.*

## II

### DEFENDANTS' DEMURRERS

#### A

### THE STANDARD OF REVIEW FOR THE NISI PRIUS JUDGMENT ON DEMURRER TO THE EVIDENCE

 When a *trial court* considers a demurrer to the evidence [7] it must take as true all evidence (together with all reasonable inferences) favorable to the party against whom relief is sought and *disregard* any

conflicting evidence that may favor the demurrant.[8] A demurrer should be overruled unless there is an *entire* absence of proof *tending* to show a right to recover.[9] In short, the demurrer must be denied if the opponent has made out a prima facie case.[10] A *reviewing court* will examine the record in light most favorable to the plaintiff (disregarding conflicts or contrary inferences) but will disturb the nisi prius sustention of a demurrer *only* if there is *competent evidence* to support the material elements of the plaintiff's cause of action.[11]

#### B

### EITHER DISPUTED FACTS OR CONFLICTING INFERENCES DEDUCIBLE FROM UNDISPUTED FACTS WILL COMPEL SUBMISSION OF THE OFFICER'S AND PERRY'S DIRECT NEGLIGENCE AS A JURY ISSUE

 Three evidentiary elements essential to a prima facie case of negligence are:

---

appeal, raise allegations of error that were available to him at the time of the filing of his motion for a new trial but were not therein asserted." (Emphasis added.)

6. By this court's October 21, 1991 order, Hagens' appeal—Number 78,097—was consolidated with that by Jackson and Cox for contemporaneous disposition by a single opinion.

7. The terms of 12 O.S.1991 § 577 provide in pertinent part:

"When the jury has been sworn, the trial shall proceed in the following order, unless the court for special reasons otherwise directs:
* * * * * *
Third. The party on whom rests the burden of the issues must first produce his evidence; after he has closed his evidence the adverse party may interpose and file a demurrer thereto, *upon the ground that no cause of action or defense is proved.* If the court shall sustain the demurrer, such judgment shall be rendered for the party demurring as the state of the pleadings or the proof shall demand...." (Emphasis added.)

8. *Byford v. Town of Asher,* Okl., 874 P.2d 45, 47 (1994); *Blood v. R & R Engineering, Inc.,* Okl., 769 P.2d 144, 145 (1989); *Messler v. Simmons Gun Specialties, Inc.,* Okl., 687 P.2d 121, 130 (1984); *Ray v. Ridpath,* 145 Okl. 69, 291 P. 546, 547 (1930) (the court's syllabus at ¶ 4).

9. *Blood, supra* note 8 at 145; *Martin v. Stratton,* Okl., 515 P.2d 1366, 1368 (1973); *Fletcher v. Meadow Gold Co.,* Okl., 472 P.2d 885, 888 (1970); *Haynie v. Haynie,* Okl., 426 P.2d 717, 720–721 (1967); *Condo v. Beal,* Okl., 424 P.2d 48, 51 (1967).

10. Courts use the concept of "prima facie case" in two different senses: (1) to describe that state of a case in which the party plaintiff rests after producing *evidence in chief to support the* material elements of its cause of action (i.e., as a quantum of evidence necessary for the claim's submission to a jury), and (2) to address situations where the plaintiff's evidence as a whole is not countered because the defendant produces nothing to rebut it. *Husbands v. Com. of Pa.,* 395 F.Supp. 1107, 1139 (D.C.Pa.1975). When reference is made to a ruling upon a demurrer to the evidence the term is employed in the *first* sense. *See in this connection Rotramel v. Public Service Company,* Okl., 546 P.2d 1015, 1018 (1975); *Mayo v. Overstreet,* 107 Okl. 223, 227 P. 396, 397 (1924); *Hamilton v. Blakeney,* 65 Okl. 154, 165 P. 141, 144 (1917); *Meadors v. Johnson,* 27 Okl. 544, 112 P. 1121, 1124 (1910).

11. *Middlebrook v. Imler, Tenny & Kugler, M.D.'s,* Okl., 713 P.2d 572, 586 (1985); *Green v. Safeway Stores, Inc.,* Okl., 541 P.2d 200, 203 (1975); *Cook v. Bingman,* 198 Okl. 421, 179 P.2d 470, 472 (1947).

(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure properly to exercise or perform that duty and (3) the plaintiff's injuries proximately caused by the defendant's breach.[12] If *facts relevant to the question of primary negligence are in dispute,* the issue *must* be submitted to the jury.[13] Whenever *uncontroverted* proof lends support to *conflicting inferences,* the choice to be made between opposite alternatives *also* presents an issue of fact for the trier.[14]

### 1. The Officer's Negligence

◼ It is *uncontroverted* that the Officer entered the median *without* operating his audible siren. Neither is it disputed that traffic behind him was fanning out into the unblocked beginning of the right lane. One *potential* inference from this evidence is that, under the circumstances, the Officer may have created a foreseeable risk of harm. Although this inference *is permissibly drawn from undisputed facts,* the Officer's primary negligence nonetheless presents a question for the trier.[15]

12. *Thompson v. Presbyterian Hospital, Inc.,* Okl., 652 P.2d 260, 263 (1982); *Nicholson v. Tacker,* Okl., 512 P.2d 156, 158 (1973); *Rush v. Mullins,* Okl., 370 P.2d 557, 559 (1962); *St. Louis–San Francisco Railway Co. v. Witty,* Okl., 327 P.2d 453, 455 (1958).

13. *Kansas City Southern Railway Co. v. Marrow,* Okl., 326 P.2d 817, 820 (1958); *Crown Drug Company v. McBride,* Okl., 303 P.2d 970, 972–973 (1956).

14. *Wetsel v. Independent School Dist. I–1,* Okl., 670 P.2d 986, 991 (1983); *Thomas v. Hensel Optical Labs,* Okl., 653 P.2d 201, 203 (1982); *Holland v. Dolese Co.,* Okl., 643 P.2d 317, 320 (1982); *Flick v. Crouch,* Okl., 434 P.2d 256, 261 (1967); *Morain v. Lollis,* Okl., 371 P.2d 473, 475 (1962); *Mistletoe Express Service v. Culp,* Okl., 353 P.2d 9, 12 (1960).

15. *See Wetsel, supra* note 14 at 991; *Thomas, supra* note 14 at 203.

16. In Oklahoma's jurisprudential nomenclature, "supervening" cause is synonymous with that which the RESTATEMENT (SECOND) TORTS calls "superseding" cause—an intervening event which, in a negligent tort case, will sever the causal chain. The terms of Section 440, RESTATEMENT (SECOND) TORTS are:

### 2. Perry's Negligence

◼ Whether Perry had sufficient opportunity to negotiate around the protruding Jones vehicle is *in controversy.* On this record it is impossible for us to say *as a matter of law* that Perry's stopping was consistent with due care because his conduct was free from *a reasonably foreseeable risk of harm.*

## C

### NEITHER THE CONDUCT OF PERRY NOR THAT OF JACKSON (OR BOTH COMBINED) MAY, *AS A MATTER OF LAW,* BE CHARACTERIZED AS A *SUPERVENING CAUSE* [16]

◼ Jackson and Cox urge reversible error in the trial court's ruling that sustained the three defendants' demurrers to their evidence. That decision was grounded in the notion that *as a matter of law Perry's* actions constitute a supervening event. Negligence is not actionable unless it *proximately causes* the harm for which liability is sought to be imposed.[17] In a negligent tort case the question of *proximate cause* [18] is generally one of

"A *superseding cause* is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." (Emphasis added.)

*See in this connection William J. McNichols,* The Relevance of the Plaintiff's Misconduct in Strict Torts Products Liability, the Advent of Comparative Responsibility, and the Proposed *Restatement (Third) of Torts* 47 OKLA.L.REV. 201, 270 n. 307 (1994), where the term "intervening" cause seems to be the author's preference for the same concept.

17. *Thompson, supra* note 12 at 263.

18. Proximate cause is not necessarily the immediate, near or *nearest* cause. It is one that *acts as first* and immediate (1) to the injury or (2) to other causes set in motion by it. In the latter case an event may be said to proximately cause the injury if the causes it initiates are each started naturally by the one that precedes it by altogether constituting a complete chain or succession of events, which are so united to each other by a close causal connection *as to form a natural whole through reaching from the first, or producing cause, to the final result. Pfeifer v. Standard Gateway Theater,* 262 Wis. 229, 55 N.W.2d 29, 33 (1952).

fact for the jury.[19] It becomes one of law *only* when there is *no evidence* from which a jury could reasonably find a causal nexus between the act and the injury.[20] The *presence* of competent evidence to show this causal connection—i.e., whether there is *any* competent evidence that would support a jury finding of causation—is *in turn* a law question for the court.[21]

 The general rule is that the causal chain between a negligent act and an injury may be broken by an intervening event—a *supervening cause*.[22] Not every intervening event severs the causal link between negligent act and injury.[23] For example, when a cause *merely combines* with another act to produce injury,[24] or *several events coincide* to bring about a single injurious result,[25] *each* negligent actor may be held accountable. For an occurrence to rise to the magnitude of a *supervening cause* it must possess three attributes: (1) *independence* from the original negligent act, (2) *adequacy of itself* to bring about the com-plained-injury and (3) *reasonable unforseeability*.[26] The question of an intervening event's *foreseeability* calls for an *evaluative determination*[27] by the trier of fact. Whether the injurious consequences that resulted from the original negligence could have been reasonably foreseen is an issue traditionally within the realm of *fact, not law*.[28] If the intervening force is of a character which (under the circumstances) would induce belief that it might be *reasonably expected* to occur, the final element is *not* met and the causal chain will remain *unbroken*.[29]

### 1. Defendant Perry's Negligence

 *Disputed, relevant facts call for the jury's evaluative determination on this issue*.[30] Whether Perry had sufficient room to remain in the left lane and still avoid Jones is in controversy. This means that whether Jones could *reasonably anticipate* Perry's stopping at the time and place in suit is a pure fact question.[31]

19. *Thompson, supra* note 12 at 263; *Smith v. Davis*, Okl., 430 P.2d 799, 800 (1967).

20. *Thompson, supra* note 12 at 263; *Pepsi–Cola Bottling Co. of Tulsa, Okl. v. Von Brady*, Okl., 386 P.2d 993, 996 (1963).

21. *Thompson, supra* note 12 at 263.

22. See *supra* note 16 for an explanation of this term's use.

23. *Graham v. Keuchel*, Okl., 847 P.2d 342, 348 (1993); *Minor v. Zidell Trust*, Okl., 618 P.2d 392, 394 (1980); *Brodsky v. Atchison, Topeka & Santa Fe Railway Co.*, Okl., 368 P.2d 852, 854 (1961).

24. *Graham, supra* note 23 at 348; *Minor, supra* note 23 at 394; *Champlin Oil and Refining Co. v. Roever*, Okl., 477 P.2d 662, 667 (1970); *Meyer v. Moore*, Okl., 329 P.2d 676, 681 (1958); *City of Okmulgee v. Hemphill*, 183 Okl. 450, 83 P.2d 189, 191 (1938).

25. *Graham, supra* note 23 at 348; *Minor, supra* note 23 at 394; *Green v. Sellers*, Okl., 413 P.2d 522, 528 (1966).

26. *Graham, supra* note 23 at 348; *Thompson, supra* note 12 at 264; *Long v. Ponca City Hospital*, Okl., 593 P.2d 1081, 1084 (1979).

27. "... The issue as to whether a *described* consequence was 'foreseeable,' or was 'directly' caused, and the issue as to whether an intervening force was 'abnormal' are to be decided as issues of fact are decided.... [T]o decide, for example, whether a described consequence was 'foreseeable' one must apply to the determined physical facts a legal standard—the concept of 'foreseeability' as it is defined and explained in the legal precedents. *The decision to be made is an evaluative determination—an evaluation of the facts as measuring up to or not measuring up to the legal standard which has been set by the precedents defining 'foreseeability' as used in this legal context.*" (Emphasis added.) PROSSER AND KEETON ON THE LAW OF TORTS, § 45 (5th ed. 1984).

28. *Bradford Securities v. Plaza Bank and Trust*, Okl., 653 P.2d 188, 190 (1982).

29. *Atherton v. Devine*, Okl., 602 P.2d 634, 635–636 (1979).

30. *Marrow, supra* note 13 at 820; *McBride, supra* note 13 at 972–973.

31. Authority cited by the defendants for the proposition that a negligently parked automobile *may never, as a matter of law*, be the primary cause of injury where another driver's negligence is injected into the causal chain is inapplicable. *Thur v. Dunkley*, Okl., 474 P.2d 403, 405–406 (1970); *Woodward v. Kinchen*, Okl., 446 P.2d 375, 377 (1968); *Von Brady, supra* note 20 at 997. Those cases involved defendants *whose conduct operat-*

### 2. Plaintiff Jackson's Negligence

The dismissed defendants contend on appeal that the trial court's judgment on demurrers is *nonetheless correct* because *Jackson's* alleged negligence—when scrutinized—rises to the level of a supervening cause. A successful party who did not appeal, counter- or cross-appeal may assign in an appellate court *only those errors* which, if rectified, would *support the correctness* of the trial court's judgment.[32] These dismissed defendants clearly stand here in a posture *restricted to the defense of the relief granted them below*[33]—that of judgment upon their evidentiary demurrers. Although these defendants urge that the nisi prius judgment is correct, and ask us to ascribe a supervening character to *Jackson's* acts, *there is no record support to sustain their contention as a matter of law.* It is *undisputed* that the truck/boat trailer avoided Perry by changing lanes and that traffic in the right-hand lane was too heavy for Jackson to negotiate a similar lane change. Two opposite inferences may be drawn from these facts: Either (1) Jackson *could have* (like the truck/boat trailer ahead) successfully dodged Perry or (2) the swift and heavy right-lane traffic prevented him from passing Perry and thus avoiding the impact. *From the vantage point of Jones, reasonable anticipation* of Jackson's collision with the Perry mobile home (which may or may not have been able to circumnavigate the Jones vehicle) is a question upon which reasonable minds might differ. Hence, the *foreseeability* of *Jackson's* acts—negligent or not—must be left for an evaluative decision of the jury.[34]

## III

### THIS COURT CANNOT REACH FOR CERTIORARI REVIEW THAT PORTION OF THE COURT OF APPEALS' OPINION WHICH REVERSED THE TRIAL COURT'S DENIAL OF NISI PRIUS COSTS TO HAGENS

Extant jurisprudence[35] teaches that issues *resolved* by the Court of Appeals but not *explicitly pressed* for certiorari review are beyond this court's cognizance.[36] Hagens, while *unsuccessful* in his costs quest at nisi prius, *prevailed* on this issue in the appellate court. *At that juncture of appellate contest it became incumbent upon Jackson to challenge the correctness of the appellate court's reversal that allowed costs to Hagens.* A *timely* quest for our corrective relief from the costs' award (to Hagens) is absent from Jackson's certiorari paperwork. That portion of the Court of Appeals opinion must hence stand undisturbed as settled law of this case.[37]

## IV

### SUMMARY

The trial court erred when it entered judgment for the City, Jones and Perry upon these defendants' evidentiary challenge by their demurrers. The Officer's, Jones' and

---

*ing alone would not have been sufficient to cause the accident.*

**32.** *Price v. Reed*, Okl., 725 P.2d 1254, 1261 n. 29 (1986); *Oklahoma Water Resources Bd. v. Texas County*, Okl., 711 P.2d 38, 43–44 (1984); *Cleary Petroleum Corp. v. Harrison*, Okl., 621 P.2d 528, 534 (1980); *Nilsen v. Tenneco Oil Co.*, Okl., 614 P.2d 36, 39 (1980); *Matter of Estate Bradshaw*, Okl., 606 P.2d 578, 580 (1980); *May v. May*, Okl., 596 P.2d 536, 540 (1979); *Woolfolk v. Semrod*, Okl., 351 P.2d 742, 745 (1960).

**33.** *May, supra* note 32 at 540 n. 12; *Woolfolk, supra* note 32 at 745.

**34.** For the same reasons Hagens' actions cannot, *as a matter of law*, be said to rise to the stature of a supervening cause.

**35.** *Hough v. Leonard*, Okl., 867 P.2d 438 (1993); *Ford v. Ford*, Okl., 766 P.2d 950 (1988).

**36.** *Hough, supra* note 35 at 445; *Ford, supra* note 35 at 952 n. 1.

**37.** The *settled-law-of-the-case doctrine* operates to bar relitigation of issues which are finally settled *by an appellate opinion* or those that the aggrieved party *has failed timely to raise in the course of appellate contest*. *Morrow Dev. v. American Bank and Trust*, Okl., 875 P.2d 411, 413 (1994); *Panama Processes v. Cities Service Co.*, Okl., 796 P.2d 276, 283 n. 27 (1990); *Mobbs v. City of Lehigh*, Okl., 655 P.2d 547, 549 (1982). The cost issue's disposition in the Court of Appeals is settled law of the case *only* for purposes of determining how costs are to be taxed *in the trial court*. It is *not* dispositive of appeal- and certiorari-related costs.

Perry's primary negligence presents a question of fact for the jury.

*Undisputed record facts* which support *conflicting inferences* make the Officer's negligence a question for the jury. *Disputed facts* as to whether Perry had sufficient room to pass the Jones vehicle clearly place *his* primary negligence, if any, within the fact finder's realm.[38]

The question whether the acts of Perry or Jackson rise to the level of supervening causes which insulate the Officer, Jones and/or Perry from tort liability remains one for an evaluative determination of the trier. This is so because the record reveals both *disputed facts* and undisputed facts from which *conflicting inferences* may be drawn. It is impossible to declare, as a matter of law, that *on this record* either Perry's or Jackson's actions and the natural results of their responses could *not* have been reasonably anticipated. The jury's evaluation of the relevant facts to be tendered must gauge them by the law's required rubric of "foreseeability".[39]

Because Jackson did not timely seek certiorari for our scrutiny of the appellate court's costs award against him, that determination, which lies beyond this court's reviewing cognizance, is to be treated as settled law of the case.

**ON CERTIORARI PREVIOUSLY GRANTED, THE COURT OF APPEALS' OPINION IS VACATED; THE TRIAL COURT'S JUDGMENT ON DEMURRERS IS REVERSED AND THE COURT OF APPEALS' LITIGATION COSTS' AWARD HELD BEYOND THIS COURT'S REVIEWING COGNIZANCE ON CERTIORARI; THE CAUSE IS REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.**

ALMA WILSON, C.J., KAUGER, V.C.J., HODGES, LAVENDER and OPALA, JJ., and STRUBHAR, S.J. (sitting by designation in lieu of HARGRAVE, J., who certified his disqualification), concur.

SIMMS and SUMMERS, JJ., concur in part and dissent in part.

WATT, J., dissents.

---

**38.** Jones cannot be shielded by the perceived supervening cause to be assigned either to Perry's or to Jackson's conduct.

**39.** Were we called upon to assay *sua sponte* whether *issue preclusion* bars relitigation of Jackson's negligence vis-a-vis the dismissed defendants in the case, we would look to the prior proceeding's record, taking into account the pleadings, evidence, claims and other relevant material to conclude whether a rational jury could have grounded its verdict *upon an issue other* than that which a defendant seeks to foreclose from consideration. *Ashe v. Swenson*, 397 U.S. 436, 442–44, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). There is here no post-demurrer record evidence of the dismissed defendants' negligence which this jury could have considered when it assigned to Jackson 80% of the culpability in the Jackson–Hagens contest. It is hence not possible for this fault allocation to have a *preclusive effect* upon the *issue* of Jackson's negligence in his and Cox's claims against the City, Jones and Perry.